**FILED**
September 08, 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____NM_____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TAJDINALI MOMIN, | § | |
| Petitioner, | § | |
| v. | § | NO. SA-25-CV-1017-OLG |
| KRISTI NOEM *et al.*, | § | |
| Respondents. | § | |

## ORDER

Before the Court is Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. No. 5), filed on September 1, 2025. After careful consideration of the Motion, the record, and the applicable law, the Court finds that the Motion should be and hereby is **DENIED** for the reasons below.

### I. BACKGROUND

Petitioner is a Pakistani national who has resided in the United States for over thirty years. (Dkt. No. 5 at 6). He applied for admission to the United States on June 2, 1994, but his admission was deferred. (Dkt. No. 1 at 13). Thereafter, an immigration judge entered an order of exclusion against Petitioner for failure "to establish his eligibility for admission." (*Id.*; Dkt. No. 5-1 at 10). Several years later, Respondents detained Petitioner and attempted to deport him to Pakistan. (Dkt. No. 1 at 13). However, Petitioner's deportation to Pakistan was not reasonably foreseeable at the time. (*See id.*). As a result, he was released and placed under an order of supervision ("OSUP") on May 24, 2010. (*See id.*).

On June 6, 2025, the Department of Homeland Security ("DHS") revoked Petitioner's OSUP and detained him under the order of exclusion. (*Id.*). On July 9, 2025, Petitioner applied for an adjustment of status under Form I-485. (*See id.* at 14; Dkt. No. 5-1 at 2). On August 18, 2025,

Petitioner filed a writ of habeas corpus, seeking "his immediate release from custody since his removal to Pakistan is not reasonably foreseeable," or in the alternative, an order requiring DHS "to provide notice about the third country" of removal. (*See* Dkt. No. 1 at 2). On August 29, 2025, Petitioner was transferred from the T. Don Hutto Residential Center in Taylor, Texas to a detainment facility in Arizona. (*See* Dkt. No. 5 at 7). Fearing that an abrupt interstate transfer foreshadowed his imminent removal to another country, Petitioner filed the instant Motion to enjoin Respondents from initiating removal proceedings. (*See id.* at 2).

## II.  LEGAL STANDARD

"[A] preliminary injunction is an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion." *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974). To obtain a preliminary injunction or temporary restraining order ("TRO"), the movant must demonstrate: "(1) a substantial likelihood [that he] will prevail on the merits, (2) a substantial threat [that he] will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to the movant outweighs the threatened harm the injunction may do to the nonmovant, and (4) that granting the preliminary injunction will not disserve the public interest." *Texas v. U.S. Dep't of Homeland Sec.*, 123 F.4th 186, 198 (5th Cir. 2024) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

## III.  ANALYSIS

Petitioner argues that he is entitled to relief on three due process grounds. First, Petitioner asserts that he must be released from detention because his "removal is not reasonably foreseeable." (Dkt. No. 5 at 8–9, 11). Second, Petitioner claims that the circumstances of his detention violate the Due Process Clause of the Fifth Amendment because he has not been provided notice and an opportunity "to present a fear-based claim" to contest his removal to a third

country. (*See* Dkt. No. 1 at 16–17). Third, Petitioner argues that Respondents have violated their own regulations by revoking his OSUP. (*See* Dkt. No. 5 at 9, 11–13).

Because Petitioner cannot establish a substantial likelihood of success on the merits as to his first claim, that he will suffer an irreparable injury concerning his second claim, or that he is entitled to a mandatory injunction regarding his third claim, Petitioner has not demonstrated that he is entitled to injunctive relief.

**A.**   *Zadvydas*

Petitioner relies on *Zadvydas v. Davis*, 533 U.S. 678 (2001), to allege that his removal is "not reasonably foreseeable." (*See* Dkt. Nos. 5 at 11; 1 at 14–16). Petitioner expressly contends that, because "previous removal attempts were unsuccessful and his adjustment of status application is currently pending," there is no likelihood that he will be removed in the reasonably foreseeable future. (*See* Dkt. No. 5 at 8–9). This argument lacks merit.

An alien must be removed within ninety days from the date of a final order of removal. *See* 8 U.S.C. § 1231(a)(1)(A). If the alien is not removed within that time, he may be detained for a longer period or released subject to terms of supervision. *Id.* § 1231(a)(3), (6). In *Zadvydas*, the Supreme Court held that "an alien's post-removal-period detention" cannot exceed "a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas*, 533 U.S. at 689. The Supreme Court then stated that six months is presumptively constitutional for an alien to be detained while awaiting removal. *See id.* at 701.

Although it is likely that Petitioner has been detained in excess of six months,[1] Petitioner has not carried his burden of showing that it is unlikely he will be removed in the foreseeable

---

[1] "Courts do broadly agree that the six-month period under *Zadvydas* does not reset when the government detains an alien under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again." *Diaz-Ortega v. Lund*, No. 1:19-CV-670-P, 2019 WL 6003485, at *7 n.6 (W.D. La. Oct. 15, 2019) (citation modified), *report and recommendation adopted*, No. 1:19-CV-670-P, 2019 WL 6037220 (W.D. La. Nov. 13, 2019); *see also Hamama v.*

3

future. Once the presumptively constitutional period expires, the alien bears the burden of demonstrating that "there is no significant likelihood of removal in the reasonably foreseeable future." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006) (quoting *Zadvydas*, 533 U.S. at 701). Petitioner argues that, because he has not been removed in the fifteen years following his release under the OSUP and has complied with the terms of his release, his removal in the near future is unlikely. (*See* Dkt. Nos. 5 at 11; 1 at 15). Such allegations, however, cannot support Petitioner's *Zadvydas* claim. *See Noda v. Barr*, No. 1:20-CV-128, 2021 WL 3929013, at *4 (S.D. Tex. Jan. 20, 2021) ("Noda only notes that United States Immigration and Customs Enforcement has failed to deport him in the past; this does not meet his burden of proving there is no significant likelihood in the future."), *report and recommendation adopted*, No. 1:20-CV-128, 2021 WL 3930049 (S.D. Tex. Feb. 9, 2021).

Petitioner's claim that a pending adjustment of status application precludes his removal is equally unavailing considering the discretionary authority afforded to the Attorney General under 8 U.S.C. § 1255. Under the Immigration and Nationality Act ("INA"), the Attorney General *may* adjust the "status of an alien who was inspected and admitted or paroled into the United States . . . if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed." 8 U.S.C. § 1255(a) (emphasis added). The plain language of § 1255(a) identifies that the Attorney General's decision to adjust the status of an alien—admitted or paroled into the United States—is entirely discretionary. *See id.*

---

*Adducci*, No. 17-CV-11910, 2019 WL 2118784, at *3 (E.D. Mich. May 15, 2019) (citing cases). Here, Petitioner alleges that he was detained in September 2009 and released on May 24, 2010. (*See* Dkt. No. 1 at 13).

4

Section 1255 does not contain any language that suggests Congress intended to hinder the Attorney General's ability to execute removal orders while an adjustment of status application is pending. *See generally* 8 U.S.C. § 1255. Further, Petitioner cites no case law that recognizes an adjustment of status application, filed under § 1255, forestalls the Attorney General's discretion to execute a removal order. (*See* Dkt. No. 5 at 10). Indeed, federal courts recognize that such applications have no effect on an alien's removability. *See Ayanian v. Garland*, 64 F.4th 1074, 1082 (9th Cir. 2023) (acknowledging a pending adjustment of status application has no effect on removal proceedings); *see also Poghosyan v. U.S. Dep't of Homeland Sec.*, No. 2:25-CV-03091-SB-ADS, 2025 WL 1287771, at *4 (C.D. Cal. May 1, 2025) ("[T]he regulation requiring an applicant's continued presence in the United States, promulgated under § 1255(a), does not purport to create a right to remain in the country that overrides the Attorney General's discretionary authority to execute a removal order."). Petitioner fails to explain how § 1255—or any other provision of the INA—affects removability in circumstances where an alien has filed an adjustment of status application. Accordingly, Petitioner's allegations fail to show that he is likely to succeed on the merits of his *Zadvydas* claim.

**B.     Procedural Due Process**

Although it is not expressly raised in his Motion, Petitioner claims that he is entitled to additional process before his removal to a third country. (*See* Dkt. No. 1 at 16–17). Specifically, Petitioner claims that he has "the right to a process and procedure ensuring that DHS provides meaningful notice and [an] opportunity to present a fear-based claim to an immigration judge before DHS deports [him] to a third country." (*See id.* at 17). This claim is far too speculative to warrant injunctive relief.

5

To obtain a preliminary injunction, a movant must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original) (citations omitted). "Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *See Morrell v. City of Shreveport*, 536 F. App'x 433, 435 (5th Cir. 2013) (per curiam) (citation modified). Here, Petitioner presents no allegations explaining how DHS has deprived him of notice and an opportunity to present a fear-based claim prior to a third-country removal. (*See generally* Dkt. No. 1). Petitioner's allegations are devoid of *any* facts that identify a designated third country to which Petitioner may be removed. In the absence of nonconclusory allegations specifying some third country of removal and an opportunity to challenge that removal, the Court is left to speculate on whether Petitioner will, in fact, be removed to a third country.[2] *See Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 1895479, at *6 (S.D. Fla. July 8, 2025) ("ICE has not designated, nor even attempted to designate, a third country to which Grigorian may be removed, nor is there any suggestion that removal to any third country is imminent or even planned. Grigorian's argument is that he has been deprived of due process by a decision that has not yet been made in a proceeding that has not yet happened."). Because removal to a third country is far too speculative at this juncture, Petitioner is not entitled to injunctive relief with respect to this claim.

C.   **Revocation of Supervised Release**

Petitioner also asserts that under 8 C.F.R. § 241.13(i), Respondents were required to "provide Petitioner with any notice about the reason for the revocation of his release," conduct an

---

[2] Petitioner's allegations suggest that, if removed, he will be sent to Pakistan, which is the country designated in Petitioner's OSUP. (*See* Dkt. Nos. 5 at 6; 5-1 at 15). Further, Petitioner does not allege that he has received a deferral order pursuant to the Convention Against Torture ("CAT"), barring his removal to Pakistan. *See* 8 C.F.R. § 1208.17(a). At this time, there is no indication that Petitioner would be sent to any country other than Pakistan.

6

interview, and "provide him an opportunity to rebut their claim that removal is now foreseeable or that he has violated the order of supervision." (*See* Dkt. No. 5 at 11–12). Because Respondents allegedly did not adhere to the applicable regulatory procedures, Petitioner argues that his due process rights have been violated and his immediate release from custody is warranted. (*See id.*; Dkt. No. 1 at 16–17).

Petitioner's request for release from detention is not a request for a prohibitory injunction. Petitioner asks the Court to order Respondents to "release Petitioner from unconstitutional detention." (Dkt. No. 5 at 16). A request for an injunction that compels a party to act—rather than preserve the status quo—is a mandatory injunction. *See Injunction*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "mandatory injunction" as "[a]n injunction that compels a party to do some act or mandates a specified course of conduct"). To obtain a mandatory injunction, a movant must *clearly* demonstrate that they are entitled to relief in light of the facts and law. *See Martinez v. Mathews*, 544 F.2d 1233, 1234 (5th Cir. 1976) ("Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party."). In circumstances where it is unclear whether the movant is entitled to relief, the movant must demonstrate that "extreme or very serious damage will result from a denial of the injunction." *Phillips v. Fairfield Univ.*, 118 F.3d 131, 133 (2d Cir. 1997) (citation modified).

In the present case, Petitioner is not requesting mere preliminary relief to maintain the status quo pending a determination on his habeas corpus petition. He claims that he is entitled to a release from detention because his order of supervised release was improperly revoked by Respondents. (Dkt. No. 5 at 11–13, 15–16). Even if Petitioner's allegations are true—that Respondents did not provide notice concerning the revocation of his supervised release, did not

conduct an informal interview as required by the regulations, and did not provide him with an opportunity to contest the revocation—he has not clearly shown that he will suffer "extreme or very serious damage" if he remains detained. *See Phillips*, 118 F.3d at 133. Neither has Petitioner demonstrated that his continued detention will seriously jeopardize his medical condition. (*See* Dkt. No. 5 at 14). The INA specifically authorizes the Attorney General, acting through ICE, to provide medical care for those who require it throughout removal proceedings. *See* 8 U.S.C. § 1231(f). Once again, the allegations do not suggest that ICE has failed to care for Petitioner. As such, the Court finds that Petitioner is not entitled to a mandatory injunction ordering his release.[3]

## IV.  CONCLUSION

For the reasons stated herein, Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. No. 5) is **DENIED WITHOUT PREJUDICE**, with leave to renew the request if the facts and circumstances so warrant.

It is so **ORDERED**.

**SIGNED** this ____8____ day of September, 2025.

_____
ORLANDO L. GARCIA
United States District Judge

---

[3] Ordering Petitioner's release from detainment would, "in essence, [constitute] a final decision on the merits" because it is the same relief Petitioner seeks in his writ of habeas corpus. *Arbor Bend Villas Hous., L.P. v. Tarrant Cnty. Hous. Fin. Corp.*, No. 4:02-CV-478-Y, 2002 WL 1285564, at *3 (N.D. Tex. June 6, 2002); (*see* Dkt. No. 1 at 17). Because Petitioner's allegations do not demonstrate that he will suffer extreme or serious harm while remaining in detention, the Court declines to grant Petitioner the ultimate relief sought at this stage.

A denial of injunctive relief does not leave Petitioner without recourse with respect to this due process claim. Petitioner will have the opportunity to contest the validity of this revocation while litigating the merits of his habeas corpus petition.